**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**EDDIE TRIPLETT # 125982**                                    **CIVIL ACTION**

**VERSUS**                                                              **NO. 04-1434**

**N. BURL CAIN, WARDEN**                                 **SECTION "C"**
**LA. STATE PENITENTIARY**

**ORDER AND REASONS**[1]

Before the Court is Mr. Eddie Triplett's ("Petitioner") application for writ of habeas corpus. Having considered the record, Petitioner's memorandum in support of his application, the State's memorandum in opposition to it, and the applicable law, the Court hereby PARTIALLY DENIES and PARTIALLY DEFERS the petition for the following reasons.

**I. Background**

Petitioner, Mr. Eddie Triplett, is currently serving a life sentence at the Louisiana State Penitentiary in Angola, Louisiana. On October 21, 1998, Petitioner was convicted of cocaine possession by jury at the Criminal District Court of the Parish of Orleans pursuant to La. R.S. 40:967(C)(2).[2] As a fourth felony offender, he was sentenced on March 1, 1999 to life in prison pursuant to the Louisiana Habitual Offender Statute La. R.S. 15:529.1.[3]

---

[1]The resolution of the first seven claims are virtually identical to a previous Order and Reasons issued on November 9, 2005, and later vacated on October 18, 2007.

[2]State Rec., Vol. 3, Criminal Minute Entry 3, *State v. Triplett*, Oct. 21, 1998.

[3]State Rec., Vol. 3, Criminal Minute Entry 12, *State v. Triplett*, Mar. 1, 1999.

On May 1, 2000, Petitioner filed a direct appeal[4] with the Louisiana Fourth Circuit Court of Appeal, which affirmed his conviction and sentence in an unpublished opinion on January 17, 2001.[5] Petitioner subsequently filed a writ of certiorari in the Supreme Court of Louisiana which denied relief on May 31, 2002, without assigning reasons.[6]

Petitioner then pursued post-conviction relied in the state courts. He filed an application for post-conviction relief with the Criminal District Court of the Parish of Orleans on May 19, 2003.[7] This application was denied on June 6, 2003.[8] Petitioner next filed a writ of certiorari with the Louisiana Fourth Circuit Court of Appeal on June 23, 2003,[9] which was denied on August 5, 2003.[10] Then, Petitioner appealed to the Louisiana Supreme Court on August 28, 2003.[11] That writ was denied on February 6, 2004.[12]

---

[4]State Rec., Vol. 2, Original Brief on behalf of Defendant, *State v. Triplett*, No. 2000-KA-0620, signed May 1, 2000, filed May 2, 2000.

[5]State Rec., Vol. 3, Conviction and Sentence Affirmed, *State v. Eddie Triplett*, No. 2000-KA-0620 (La. App. 4 Cir. 01/17/01).

[6]State Rec., Vol. 3, Order, *State v. Eddie Triplett*, No. 2001-KO-0654 (La. 05/31/02). Filing date of the writ is unknown, yet there is no indication that it was filed untimely.

[7]State Rec., Vol. 2, Vol. 4, Uniform Application for Post-Conviction Relief, *Triplett v. Cain*, signed May 19, 2003, filed May 27, 2003. There are two copies of Petitioner's state application. One was signed on May 19, 2003 and the other was signed on May 22, 2003. The district court noted that the pleadings were received and filed on May 27, 2003. Giving Petitioner the benefit of the earliest possible date, the Court finds that the application was filed as of May 29, 2003.

[8]State. Rec., Vol. 2, Judgment, *State v. Triplett*, No. 400-740, Jun. 6, 2003.

[9]State Rec., Vol. 4, Application for Writ of Review, *Triplett v. Cain*, Jun. 23, 2003.

[10]State Rec., Vol. 4, Order, *State v. Triplett*, No. 03-K-1231, Aug. 5, 2003.

[11]State Rec., Vol. 4, Application for Writ of Review. *Triplett v. Cain*, No. 03-KH-2654, signed Aug. 28, 2003, filed Sept. 22, 2003. The Louisiana Supreme Court reflects the filing date as September 22, 2003, but the petition was signed on August 28, 2003. The Court gives Petitioner the benefit of the earlier date.

[12]*State ex. rel. Triplett v. Louisiana*, No. 2003-2654, 865 So.2d 741 (La. 2/6/04).

On April 14, 2004, Petitioner filed this federal application for habeas corpus.[13]  In support of his application, Petitioner raises the following seven claims, a combination of the four claims he raised on direct appeal and the three claims he raised on state post-conviction review:[14]

1)   The trial court erred in denying Petitioner's motion to suppress the evidence.

2)   The trial court erred in failing to grant Petitioner's motion for mistrial after the prosecutor made a comment infringing on his presumption of innocence.

3)   The trial court erroneously instructed the jury as to the sentencing range over Petitioner's objection.

4)   The trial court imposed an excessive sentence.

5)   Petitioner has been denied his constitutional right to appellate review and his constitutional right to a complete transcript.

6)   The State did not prove that Petitioner's prior guilty pleas were taken in compliance with the provisions of *Boykin v. Alabama*, 395 U.S. 238 (1969).

7)   The trial court failed to advise Petitioner of his right to remain silent at the habitual offender arraignment and at the multiple offender hearing.

**II. Exhaustion and Timeliness**

---

[13]Rec., Petition Under 28 U.S.C. 2254 for Writ of Habeas Corpus By Person in State Custody, *Triplett v. Cain*, No. 04-1434, signed Apr. 14, 2004, filed May 19, 2004. April 14, 2004 is the earliest date that Petitioner could have presented his Motion for mailing, and therefore the earliest date this Court could consider the petition as filed for statute of limitations purposes. The Court will thus treat this date as the date it was filed for purposes of determining timeliness.

[14]Rec., Petition Under 28 U.S.C. 2254 for Writ of Habeas Corpus By Person in State Custody, *Triplett v. Cain*, No. 04-1434, signed Apr. 14, 2004, filed May 19, 2004, p. 3.

The State acknowledges, and the Court agrees, that Petitioner has presented all seven of his claims to the Louisiana Supreme Court.[15] Accordingly, Petitioner has satisfied the exhaustion requirement. *See Picard v. Connor*, 404 U.S. 270, 275 (1971).

With respect to timeliness, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires that a petitioner bring his habeas corpus claims under 28 U.S.C. § 2254 within one year of the date on which his conviction or sentence became final.[16] A petitioner's conviction becomes final for purposes of determining timeliness on the date when the time for filing a petition for certiorari with the United States Supreme Court ends. *Clay v. United States*, 537 U.S. 522, 525 (2003). Petitioner's writ of certiorari was denied by the Louisiana Supreme Court on May 31, 2002. Petitioner had 90 days to file a petition for certiorari with the United States Supreme Court. SUP. CT. R. 13. Because he did not file a petition with the United States Supreme Court, his conviction became final 90 days after May 31, 2002, on August 29, 2002.

On this date, Petitioner's statute of limitations for filing a petition for habeas corpus began to run.  However, AEDPA's one-year statute of limitations is tolled for the period of time during which a properly filed application for state post-conviction relief or other collateral review attacking a conviction or sentence is pending in state court. *See Fields v. Johnson*, 159

---

[15]Rec. Doc. 6,  p. 2.

[16]28 U.S.C. § 2244(d) provides:
   (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of
      (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
      (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State Action
      (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
      (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
   (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

F.3d 914, 916 (5th Cir. 1998); 28 U.S.C. §2244(d)(2). "'[A] properly filed application is one submitted according to the state's procedural requirements, such as the rules governing notice and the time and place of filing." *Villegas v. Johnson*, 184 F.3d 467, 469 (5th Cir. 1999) (quoting *Lovasz v. Vaughn*, 134 F.3d 146, 148 (3d Cir. 1998)); *Williams v. Cain*, 217 F.3d 303, 308 (5th Cir. 2000).

Petitioner properly filed an application for post-conviction relief in the Criminal District Court of the Parish of Orleans on May 19, 2003.[17] Between August 29, 2002 when Petitioner's conviction became final for federal habeas purposes and May 19, 2003 when Petitioner filed for post-conviction relief, 263 days had passed.

Although the United States Circuit Court of Appeals for the Fifth Circuit has not directly addressed the issue of when the Louisiana Supreme Court's denial of an application for state post-conviction relief is considered "final" for the purpose of calculating a tolling period in a federal habeas corpus proceeding, it appears that the general practice is to consider a writ denial final as of the date of the denial. *See Melancon v. Kaylo*, 259 F.3d 401, 404 (5th Cir. 2001) (tolling period ended on February 5, 1999, the date of the writ denial); *Hall v. Cain*, 216 F.3d 518, 520 (5th Cir. 2000) (post-conviction application ceased to be pending on November 22, 1996, the date of the writ denial); *Chester v. Cain*, 2001 WL 1231660, at *4 (E.D. La. Oct. 15, 2001) (tolling period ended on January 12, 2001, the date of the writ denial); *Walker v. Cain*, 2001 WL 1005943, at *2 (E.D. La. Aug. 30, 2001) (tolling period ended on October 27, 2000, the date of the writ denial).

Accordingly, the statute of limitations remained tolled throughout the pendency of his application for post-conviction, or until February 6, 2004, the date the application was denied by the Louisiana Supreme Court.  Starting on February 6, 2004, the limitations period resumed for an additional 82 days until Petitioner filed the instant petition for habeas corpus on April 28, 2004.  Together with the 263 days that passed between the date that the conviction became final

_____

[17]State Rec. Vol. 2. Uniform Application for Post-Conviction Relief. No. 400-740.

and the filing of his application for post conviction relief, a total of 345 days of the limitations period elapsed.  Thus, Petitioner timely filed his petition prior to the expiration of the one year statute of limitations period.

Because Petitioner's claims are exhausted and timely, the claims will be considered on the merits.

### III. Standard of Review

The AEDPA comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact.[18]  Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2). *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).  The United States Supreme Court has noted the following:

§2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning.  A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts.  The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case.  The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in

---

[18] 28 U.S.C. §2254(d) :
    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
        (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established  Federal law, as determined by the Supreme Court of the United States; or
        (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000)] that an unreasonable application is different from an incorrect one.

*Bell v. Cone*, 535 U.S. 685, 694 (2002) (internal citations omitted).

As to questions of fact, factual findings are presumed to be correct, and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); *see also Hill*, 210 F.3d at 485; 28 U.S.C. § 2254(e)(1).

**Statement of Facts**

The Louisiana Fourth Circuit Court of Appeal summarized the facts of the case in its opinion on direct appeal from Mr. Triplett's conviction as follows:[19]

*Statement of the Case*

On August 18, 1998, appellant Eddie Triplett was charged by bill of information with possession of cocaine. The trial court heard and denied the appellant's motion to suppress evidence on September 17, 1998. A jury found the appellant guilty as charged following trial on October 21, 1998. On March 1, 1999, after a hearing on the multiple bill, the appellant was found to be a fourth felony offender and sentenced to life imprisonment without benefit of probation, parole or suspension of sentence. A motion to reconsider sentence was denied.

*Statement of the Facts*

On July 27, 1998, at about 10:45 p.m., Police Officers Jeff Keating and Edgar Staehle were on pro-active patrol in a high crime area when they observed the defendant on a bicycle peering into the window of a parked car. When the defendant noticed the officers, he changed direction and rode away from the officers at a rapid pace. While pedaling away, the defendant looked nervously over his shoulder.

The officers ordered the defendant to stop and get off of his bicycle, which he did. He placed his right hand into his right front pocket and removed a clear plastic bag, then put the bag into his mouth. When Officer Keating told him to spit out the object the defendant threw the bag down. It landed about five feet from where Officer Staehle was standing near the police car. Officer Staehle retrieved the bag, which contained a white substance the officers believed to be cocaine.

Both officers testified that the defendant was the only person stopped at that location on that night. However, the defendant testified that the officers stopped another person at the same time that they stopped him. He further testified that the officers ran both names for records, then arrested him and let the other person go. On cross-

---

[19]State Rec., Vol. 3, Conviction and Sentence Affirmed, Louisiana Fourth Circuit Court of Appeal, No 2000-KA-0620, Jan. 17, 2001, pp. 1-2.

examination, the defendant admitted to convictions for distribution of cocaine in 1993, for simple burglary and possession of cocaine in 1989, and for burglary of an inhabited dwelling in 1979.

## IV. Law and Analysis

### Claim I: Motion to Suppress the Evidence

Petitioner's first claim is that the state trial court erred in denying his motion to suppress the evidence, specifically the cocaine, that police officers found after stopping him. Petitioner asserts that he was stopped by police without reasonable suspicion, in violation of his right to privacy under Article 1, § 5 of the Louisiana Constitution as well as Article 215 of the Louisiana Code of Criminal Procedure governing police searches. Because he was stopped without reasonable suspicion, the evidence found as a result of the stop should have been suppressed.

Petitioner relies exclusively on Louisiana law to support his argument. However, a petitioner can obtain federal habeas corpus relief "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." *See* 28 U.S.C. 2254(a). "Federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (internal citations omitted). It is not the "province of a federal habeas court to reexamine state-court determinations on state-law questions." *Id.* Thus, because he has not argued that the denial of the motion to suppress the evidence violated the United States Constitution, the Court must deny his first claim.

Although Petitioner does not make this argument, this Court would also be unable to consider a claim based on the grounds that the evidence obtained from the stop and search were in violation of the Fourth Amendment of the United States Constitution. A petitioner is not able to litigate a Fourth Amendment illegal search and seizure issue in federal court unless he was not provided with an opportunity to have full and fair litigation of the claim in state court. *See Stone v. Powell*, 428 U.S. 465, 494 (1976). "[W]here there are *facts* in dispute, full and fair consideration requires consideration by the fact-finding court, and at least the availability of meaningful appellate review by a higher state court. Where, however, the facts are undisputed,

and there is nothing to be served by ordering a new evidentiary hearing, the full and fair consideration requirement is satisfied where the state appellate court, presented with an undisputed factual record, gives full consideration to defendant's Fourth Amendment claims." *O'Berry v. Wainwright*, 546 F.2d 1204, 1213 (5th Cir.), *cert. denied*, 433 U.S. 911, 97 S.Ct. 2981 (1977) (emphasis in original). Petitioner had the opportunity to fully and fairly litigate his claim in the motion to suppress hearing before the state trial court, during which the cocaine was ruled admissible as evidence after hearing testimony from one of the police officers who arrested Mr. Triplett and argument from defense counsel.[20] Petitioner also raised the issue on his direct appeal. The Fourth Circuit Court of Appeal denied the claim, finding there was no error with the trial court's denial of the motion to suppress evidence. Therefore the Court is barred from considering this claim, and Petitioner's claim is denied.

### Claim II: Motion for Mistrial

Mr. Triplett next contends that the trial court erred in failing to grant his motion for mistrial after the prosecutor made a comment infringing on his presumption of innocence. Defense counsel called for a mistrial claiming that the prosecutor was "shifting the burden" to his client after the prosecutor made it known to the jury that Mr. Triplett had been in prison since his arrest.[21] Petitioner now argues that the trial court erred in denying his motion for mistrial.

The "right to a fair trial is a fundamental liberty secured by the Fourteenth Amendment" and the "presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice." *Estelle v. Williams*, 425 U.S. 501, 503 (1976). To secure a fair trial, "courts must carefully guard against dilution of the principle that guilt is to be established by probative evidence and beyond a reasonable doubt." *Id.* Petitioner argues that his presumption of innocence was compromised by the prosecutor's

---

[20]State Rec., Vol. 3, Transcript of Motion to Suppress Hearing, *State v. Triplett*, No. 400-740, Sept. 17, 1998.

[21]State Rec., Vol. 2, Trial Transcript, *State v. Triplett*, No. 400-740, Oct. 21, 1998, pp. 44-46.

comment that he was in prison since his arrest, and that the trial court erred when it denied his motion for a new trial. Petitioner draws support for his argument primarily from a United States Supreme Court case, which held that a "[s]tate cannot, consistently with the Fourteenth Amendment, compel an accused to stand trial before a jury while dressed in identifiable prison clothes." *Estelle*, 425 U.S. at 512.

Analogizing his case to *Estelle*, Petitioner contends that "the prosecutor effectively clothed petitioner in an orange prison uniform when he told the jury that petitioner had been in prison since July." [22] In *Estelle*, the attire of a defendant at a jury trial was deemed significant because "the constant reminder of the accused's condition implicit in such distinctive, identifiable attire may affect a juror's judgment." *Estelle*, 425 U.S. at 504-505. Such a reminder can constitute harmful constitutional error sufficient to justify a new trial. *Estelle*, 425 U.S. at 506-509. Alternately, Petitioner's claim can be recast as a claim that the prosecutor's conduct was improper. Under either inquiry, Petitioner must establish that he was prejudiced by the comment. *See Whittington v. Estelle*, 704 F.2d 1418 (5 Cir.), *cert denied*, 464 U.S. 983 (1983). "Improper jury argument by the prosecution does not present a claim of constitutional magnitude which is cognizable in a proceeding under 28 U.S.C. § 2254 unless such argument is so prejudicial that [the] state court trial was rendered fundamentally unfair within the meaning of the Due Process Clause of the Fourteenth Amendment." *Whittington*, 704 F.2d at 1421.

Petitioner has not established that the reference made by the prosecutor was so prejudicial that the state court trial was rendered fundamentally unfair. The present case is distinguishable from *Estelle* in that the mention of Petitioner's incarceration was momentary and in the form of a question during cross-examination. The jury was not constantly reminded that Petitioner was in prison and the judge advised the jury that neither arguments nor questions are evidence.[23] Further, the defense counsel did not object to the burden of proof portion of the jury

---

[22]Rec. Doc. 1, p. 7.

[23]State Rec., Vol. 2, Trial Transcript, *State v. Triplett*, No. 400-740, Oct. 21, 1998, p. 51.

instructions,[24] indicating that the instructions were sufficient to inform the jury that the State had the burden to prove Petitioner's guilt beyond a reasonable doubt. For these reasons, Louisiana's Fourth Circuit Court of Appeal found that the comment made by the prosecutor was not prejudicial.[25] Such a determination is not contrary to clearly established Federal law. Thus, this Court cannot disturb the court's finding that the comment was not prejudicial.

Further, to the extent that this claim can be considered as a challenge to the trial court's evidentiary ruling, it is without merit.  As the United States Fifth Circuit noted in *Castillo v. Johnson*, 141 F.3d 218, 222 (5th Cir.), *cert. denie*d 524 U.S. 979, 119 S.Ct. 28, 141 L.Ed.2d 788(1998):

> [C]laims challenging the exclusion [or inclusion] of evidence based on state law ... (do) not afford a basis for federal habeas corpus relief.  Federal habeas corpus review is limited to errors of constitutional dimension, and federal courts do not sit to review the mere admissibility of evidence under state law.  *Jernigan v. Collins*, 980 F.2d 292, 298 (5th Cir. 1992), *cert. denied*, 508 U.S. 978, 113 S.Ct. 2977, 125 L.Ed.2d 675 (1993) ... Thus, in reviewing state court evidentiary rulings, the federal habeas court's role "is limited to determining whether a trial judge's error is so extreme that it constituted a denial of fundamental fairness" under the Due Process Clause.  *Andrade v. McCotter*, 805 F.2d 1190, 1193 (5th Cir. 1986) (internal citations omitted).

An error made by the trial judge justifies "habeas corpus relief only when it is material in the sense of [being a] crucial, critical, highly significant factor," such that the trial is rendered fundamentally unfair. *Andrade*, 805 F.2d at 1193. Assuming that the trial court erred in not granting a new trial, for the reasons stated above, the Court finds that the error was not so great as to deny Petitioner fundamental fairness.

### Claim III: Jury Instruction

In his next claim, Petitioner contends that the trial court erroneously instructed the jury as to the sentencing range over Petitioner's objection.  Petitioner states that the trial court wrongly informed the jury that the sentencing range for cocaine possession was from zero to five years.

---

[24]State Rec., Vol. 2, Trial Transcript, *State v. Triplett*, No. 400-740, Oct. 21, 1998, pp. 48-52.

[25]State Rec., Vol. 3, Conviction and Sentence Affirmed, Louisiana Fourth Circuit Court of Appeal, No 2000-KA-0620, Jan. 17, 2001, pp. 3-7.

Rather, Mr. Triplett was facing the possibility of a multiple offender hearing which would impose upon him a minimum sentence of twenty years imprisonment and a maximum sentence of life in prison without the possibility of parole.

Although he cites various Louisiana Supreme Court cases in support of his claim, Mr. Triplett fails to establish that such an alleged error on the part of the trial court amounts to a violation of clearly established federal law. Rather, Petitioner argues that the state trial court misapplied state law when instructing the jury. This Court must "review state evidentiary rulings merely to determine whether the trial judge's error was so extreme that it constituted a denial of fundamental fairness." *Jernigan v. Collins*, 980 F.2d 292, 298 (5th Cir. 1992). To constitute a denial of fundamental fairness, the error must have played a "crucial, critical [and] highly significant" role in the trial. *Id.* As the Louisiana Fourth Circuit Court of Appeals noted in denying Petitioner's state application,[26] the Louisiana state trial court had the discretion to decide whether to instruct the jury about the possibility of a multiple offender hearing and the resulting possibility of a stricter sentence. *State v. Dominick*, 658 So.2d 1, 3 (La.App. 4th Cir. 1995). Petitioner has not demonstrated that the trial court acted outside of its discretion and erroneously applied the law. Even if the trial court did err in instructing the jury as to the sentencing range for a first time offender rather than for a multiple offender, such an error would not rise to the level of federal habeas corpus relief. Accordingly, this Court dismisses Petitioner's third claim.

## Claim IV: Unconstitutionally Excessive Sentence

After being adjudicated a fourth felony offender pursuant to Louisiana's Habitual Offender Statute,[27] Mr. Triplett was sentenced to life in prison. Mr. Triplett contends that his sentence is

---

[26]State Rec., Vol. 3, Conviction and Sentence Affirmed, Louisiana Fourth Circuit Court of Appeal, No 2000-KA-0620, Jan. 17, 2001, p.8.

[27]La. R.S. 15:529.1.A.(1):
  (c) If the fourth or subsequent felony is such that, upon a first conviction the offender
      would be punishable by imprisonment for any term less than his natural life then:
         (i) The person shall be sentenced to imprisonment for hte fourth or subsequent
            felony for a determinate term not less than the longest prescribed for a first
            conviction but in no event less than twenty years and not more than his natural life;
            OR

excessive in violation of Article 1, § 20 of the Constitution of the State of Louisiana. In evaluating a federal habeas petition, this Court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). As Petitioner brings this claim based on the language of the Louisiana Constitution rather than based on federal law, this Court may not consider Petitioner's argument as presented in his petition. However, construing Petitioner's claim broadly, this Court will review the record for any violation of "clearly established Federal law" in Petitioner's sentencing.

Accordingly, this Court analyzes the claim of excessive sentencing under the Eighth Amendment to the United States Constitution,[28] which the Supreme Court has interpreted as prohibiting sentences that are "grossly disproportionate" to the crime. *See Solem v. Helm*, 463 U.S. 277, 288 (1983). The determination of prison sentences is a legislative prerogative that is primarily within the province of legislatures. *See Rummel v. Estell*, 445 U.S. 263, 274-76, 63 L. Ed. 2d 382, 100 S. Ct. 1133 (1980). Courts must therefore grant "substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes." *United States v. Gonzalez*, 121 F.3d 928, 942 (1997) (internal citations omitted). "If a sentence is within the statutory limits, the petitioner must show that the sentencing decision was wholly devoid of discretion or amounted to an arbitrary or capricious abuse of discretion or that an error of law resulted in the improper exercise of the sentencer's discretion and thereby deprived the petitioner of his liberty." *Haynes v. Butler*, 825 F.2d 921, 923-24 (5th Cir. 1987) (internal citations omitted).

---

(ii) If the fourth or subsequent felony or any of the prior felonies is a felony defined as a crime of violence under R.S. 14:2(!3) or as a violation of the uniform Controlled Dangerous Substances Law punishable by imprisonment for more than five years or of any other crime punishable by imprisonment for more than twelve years, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.

[28]U.S.C.A. Const. Amend. VII. Excessive Bail, Fines, Punishments: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

Petitioner has not made such a showing. The sentence imposed was within the range allowed by Louisiana law.[29] Petitioner argues, as mitigating factors, that he received life imprisonment for a crime that carries a sentence as low as zero years or probation and that his prior felonies are "relatively minor."[30] Petitioner's predicate offenses were distribution of cocaine, possession of cocaine, and simple burglary. These offenses, as noted by Louisiana's Fourth Circuit Court of Appeal, are not minor, but rather, are fairly serious offenses.[31] Moreover, the Eighth Amendment provides no guarantee of an individualized determination of punishment in non-capital claims. *See Harmelin v. Michigan*, 501 U.S. 957, 994-95 (1991) (holding that the imposition of mandatory sentence of life in prison without possibility of parole for possession of more than 650 grams of cocaine, without any consideration of mitigating factors, such as the fact that petitioner had no prior felony convictions, did not constitute cruel and unusual punishment). Accordingly, this Court cannot find that the state trial court's sentencing determination amounted to an arbitrary, capricious, or improper abuse of discretion, and dismisses Petitioner's claim.

### Claim V: Constitutional Right to Appellate Review and Transcript

In his next claim, Mr. Triplett essentially argues that he was unconstitutionally denied copies of the documents that were filed in his case and transcripts of all court proceedings.[32]

---

[29]State Rec., Vol. 3, Conviction and Sentence Affirmed, Louisiana Fourth Circuit Court of Appeal, No 2000-KA-0620, Jan. 17, 2001, p. 11.

[30]Rec. Doc. 1, p. 11.

[31]State Rec., Vol. 3, Multiple Offender Bill of Information, filed Mar. 1, 1999; State Rec., Vol. 3, Conviction and Sentence Affirmed, Louisiana Fourth Circuit Court of Appeal, No 2000-KA-0620, Jan. 17, 2001, p. 11.

[32]Rec. Doc. 1, pp. 11-12. Petitioner also argues that he was denied a right to appellate review because "[i]n reading the Fourth Circuit's decision, it is obvious that the Fourth Circuit Court of Appeals failed to adequately review petitioner's claim, and the Louisiana Supreme Court erred concurring with the decision." *Id.* This statement amounts to a disagreement over the outcome of the appellate review and does not state a separate claim.

Petitioner initially attempted to obtain free copies of these documents on August 14, 2002.[33] He then asked for an estimate of the costs to secure the documents and offered to pay for them in a letter to the criminal district court on January 20, 2003.[34] After a thorough review of the record, it does not appear that Petitioner has ever obtained a copy of any of the requested documents. It is unclear why the state court has not yet provided Petitioner with documents he has requested, especially in light of the fact that he offered to pay for them. Assuming Petitioner has *still* not been provided with the requested documents, the Court must determine whether it was unconstitutional for the state court to have failed to turn over the documents prior to Petitioner's filing of his state post-conviction relief application and his federal habeas petition in spite of Petitioner's offer to pay for the transcripts.[35]

In his State Motion for Production of Documents, Petitioner argued that he needed copies of the public record and transcripts in his case so that he could "complete his facts in his Application For Post Conviction Relief."[36] Petitioner argues, specifically, that his ability to present the following claims were compromised: (1) that the state used more peremptory challenges than is allowed by law; (2) that African American jurors were excluded because of their race in violation of *Batson v. Kentucky*, 476 U.S. 79, 80 (1986); (3) that inadmissible testimony was admitted at trial over the objection of the defense and that evidence (the cocaine) was erroneously admitted during trial (this argument is the same as Petitioner's first claim that the judge should have granted the motion to suppress the cocaine);[37] (4) that the prosecutor

---

[33]State Rec., Vol. 2, Motion for Production of Documents And Request For Contradictory Hearing, *Triplett v. Clerk of Court*, No. 400-700, signed Aug. 14, 2002, p. 3.

[34]State Rec., Vol. 2, Letter to Criminal District Court of Orleans from Eddie Triplett, January 20, 2003.

[35]The issue of whether it was unconstitutional for the state court to not provide Petitioner with free transcripts is irrelevant because Petitioner offered to pay for the requested documents.

[36]State Rec., Vol. 2, Motion for Production of Documents And Request For Contradictory Hearing, *Triplett v. Clerk of Court*, No. 400-700, signed Aug. 14, 2002, p. 3.

[37]This Court reviewed the trial transcript for any other evidence or testimony that may have been admitted under objection by the defendant and found no objections made by the defendant.

engaged in misconduct during the closing arguments (however according to the trial transcript no objection was lodged during the closing arguments by the prosecutor)[38]; and (5) that the trial judge, in the presence of the jury, commented on the evidence and gave his personal opinion of petitioner's guilt (the only objections lodged to court comments were those raised in Petitioner's third claim relating to jury instructions).

However, Mr. Triplett's arguments were essentially legal arguments that he could have made and has in fact made without the transcripts. Mr. Triplett attended his trial and sentencing. Thus, his legal arguments were apparent to him without possession of the transcripts. Moreover, Mr. Triplett was represented by counsel on appeal, who had access to the record while preparing his appeal,[39] in which Petitioner raised his first four habeas claims.[40] The Court has reviewed each of Petitioner's arguments and, based on a thorough and extensive review of the record, the Court finds that Petitioner's ability to present his claims was not prejudiced by the fact that the State did not provide the requested documents prior to him filing his state and federal claims.

**Peremptory Challenges**

Petitioner first argues that he needed his trial transcript because he believes that during jury selection the State made more peremptory challenges than allowed by Louisiana state law.[41] However, the record reflects that both the State and the defense remained within the statutory

---

[38]State Rec., Vol. 2, Trial Transcript, *State v. Triplett*, No. 400-740, Oct. 21, 1998, pp. 47, 48, 50.

[39]State Rec., Vol. 2, Letter from Louisiana Appellate Project to Appeals Division Criminal District Court, March 28, 2000; State Rec., Vol. 2, Letter from Attorney Karen G. Arena to Eddie Triplett Re Record, June 15, 2000.

[40]Petitioner's appellate counsel had access to the record to prepare his arguments that: (1) the trial court erred in denying the motion to suppress the evidence; (2) the trial court erred in failing to grant the motion for mistral after the prosecutor referenced the fact that Petitioner was in prison; (3) the trial court erroneously instructed the jury; and (4) the sentence is excessive. State Rec., Vol. 2, Original Brief on behalf of Defendant, *State v. Triplett*, No. 2000-KA-0620, signed May 1, 2000, filed May 2, 2000, p. 2.

[41]Rec. Doc. 1, p. 14, referring to La.C.Cr.P.art. 799 which allows the State and the defense six peremptory challenges each during jury selection.

limits in making six peremptory challenges each.[42]  This allegation of excessive peremptory challenges on the part of the State during voir dire is therefore unsubstantiated. Thus, any claim made by Petitioner that the State used an excessive number of peremptory challenges is denied. The Court finds that Petitioner did not need his trial transcript to make this argument as nothing in the requested documents would have supported this claim. Thus, Petitioner was not prejudiced by the state court's failure to turn over documents.

**Batson Violation**

As stated in his brief, Petitioner also believes that African Americans jurors were "excluded because of their race."[43]  If this claim were valid, the jury selection in Petitioner's original trial would constitute a violation of the Fourteenth Amendment to the United States Constitution. Petitioner argues that he needed the requested documents in order to present a claim on these grounds. However, a thorough review of the record indicates that no *Batson* violation occurred, and even if one did, Petitioner's claim would be procedurally barred. Thus, Petitioner was not prejudiced.

For a *Batson* claim to be timely, the defendant must object to the prosecutor's challenges before the venire is dismissed and before the trial commences.  *See Thomas v. Moore*, 866 F.2d 803, 805 (5th Cir.), *cert. denied*, 493 U.S. 840 (1989). If defense counsel makes no objection at trial to any *Batson* violations, then he cannot assert a proper *Batson* claim for later review. *Harris v. Collins*, 990 F.2d 185 (5th Cir.), *cert. denied*, 113 U.S. 3069 (1983); *Wilkerson v. Colins*, 950 F.2d 1054 (5th cir. 1992), *cert. denied*, 113 S.Ct. 3035 (1993) (holding that the failure to contemporaneously object at trial is a procedural bar to a *Batson* challenge); *Jones v. Butler,* 864 F.2d 348, 370 (5th Cir. 1988), *cert. denied*, 490 U.S. 1075 (1989) (holding that a federal habeas petitioner's failure to anticipate the *Batson* decision was not "just cause" for failure to object to the state's use of peremptory challenges). Defense counsel made no such

---

[42]State Rec., Vol. 3, Criminal Minute Entry 3, *State v. Triplett*, October 21, 1998.

[43]Rec. Doc. 1, p. 14.

objections at trial.[44] Thus, this Court is barred from reviewing Petitioner's argument. The Court also finds that Petitioner did not need his trial transcript to make this argument, as nothing in the trial transcript would have supported his claim. Thus, he was not prejudiced by the state court's inexplicable failure to turn over documents.

### Claim VI: Guilty Pleas to Predicate Offenses

Petitioner next argues that the State did not prove that his three prior guilty pleas, which provided the basis for his multiple offender status, were taken in compliance with the provisions of *Boykin v. Alabama*, 395 U.S. 238 (1969).[45] The United States Supreme Court has held that by entering a plea of guilty, a defendant waives several federal constitutional rights. *Id.* at 243. Courts have consistently held that express articulation and waiver of each of these rights are not required; however, the record must show that the plea was voluntary. *Neyland v. Blackburn*, 785 F.2d 1283, 1287 (5th Cir.), *cert. denied*, 479 U.S. 930 (1986). "A guilty plea is involuntary if it is made in ignorance of its consequences, including the length of any possible sentence." *United States v. Ammirato*, 670 F.2d 552, 555 (5th Cir. 1982) (citing *Cheely v. United States*, 535 F.2d 934, 935 (5th Cir. 1976)).

The Fifth Circuit has noted that a defendant who is aware of the maximum term of imprisonment he faces is aware of the "consequences of his plea." *Hobbs v. Blackburn*, 752 F.2d 1079,1081 (5th Cir. 1985). For each of the three predicate offenses upon which his sentence was based, Mr. Triplett plead guilty. With each plea, Mr. Triplett signed a waiver of constitutional rights stating that he understood, *inter alia*, that he was waiving his right to trial and appeal and that the maximum possible sentence in each case had been explained to him.[46]

---

[44]State Rec., Vol. 2, Trial Transcript, *State v. Triplett*, No. 400-740, Oct. 21, 1998, pp. 6-8.
[45]Rec. Doc. 1, pp. 16-20.
[46]For predicate offense 271-410(F) of simple burglary, see State Rec. Vol. 3, Waiver of Constitutional Rights Plea of Guilty, Oct. 26, 1979; State Rec., Vol. 3, Minute Entry, Oct. 26, 1979.
For predicate offense 324-589(H) of possession of cocaine, see State Rec. Vol. 3, Waiver of Constitutional Rights Plea of Guilty, Mar. 23, 1988; State Rec., Vol. 3, Minute Entry, Mar. 23, 1988.
For predicate offense 362-408(H) of distribution of cocaine, see State Rec. Vol. 3, Waiver of

The facts and circumstances presented in the record demonstrate that Petitioner knew and understood both the direct consequences of the pleas he made concerning the predicate offenses and that there could be future collateral consequences in connection with each. Petitioner had counsel during the state criminal proceedings, and he made no indication that he wished to challenge his guilty pleas until this collateral attack on his multiple bill hearing. Further, Petitioner admitted to his previous convictions at trial without objection.[47]

In the light of *Boykin* and established law in the Fifth Circuit, Petitioner has failed to demonstrate that the state court's decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. Applying AEDPA's deferential standard, this Court rejects Petitioner's claim that he was sentenced as a multiple offender in violation of the Constitution.

### Claim VII: Right to Remain Silent

In his seventh claim, Mr. Triplett contends that the trial court failed to advise him of his right to remain silent at the habitual offender arraignment and at the multiple offender hearing.[48] However, Petitioner's adjudication as a fourth felony offender was based on his previous guilty pleas and not on any admissions he made at the habitual offender arraignment or at the multiple offender hearing. Thus, this claim is not grounded in the facts presented by the record and thus, the Court dismisses Petitioner's seventh claim.

To the extent that Mr. Triplett argues that he was not advised of his right to remain silent prior to pleading guilty to his previous convictions, this Court denies the claim for the same reasons the Court denied his claim that the State did not prove that his prior guilty pleas were taken in compliance with the provisions of *Boykin*.

---

Constitutional Rights Plea of Guilty; State Rec., Vol. 3, Minute Entry, July 23, 1993.
[47]State Rec., Vol. 2, Trial Transcript, *State v. Triplett*, No. 400-740, Oct. 21, 1998, pp. 43-44.

[48]Rec. Doc. 1, pp. 20-23.

## Claim VIII: Withholding of Exculpatory Evidence

In his Brief in Support of Motion to Expand the Record,[49] Triplett alleges that the prosecution withheld material exculpatory evidence from the defense.   In particular, Triplett contends that the police report available at trial was missing the "narrative" section which referred to a suspect named "Michael Cola."  The police officers testified at trial that they had stopped only one suspect at the time and place of Triplett's arrest—testimony which Triplett argues would have been seriously undermined by the conflicting police report.  Furthermore, Triplett's own testimony[50] that the police had simultaneously apprehended another man at the time of his own arrest would have been bolstered had the police narrative been available at trial.

Each page of the police report attached to the State's response is captioned with the same Item Number: "G-48336-98."   Rec. Doc. 23, Att. A.  Three pages out of the five-page report refer to Eddie Triplett; however, pages 3-4 refer to "Michael Cola" as the suspect.    The pages referring to Michael Cola describe the same narrative which the officers testified to at trial but lack any mention of Triplett.  The State apparently cannot explain this discrepancy.  Instead, the State alleges that the entire police report was available to the defense at the time of trial, pointing to an exchange between the arresting officers and Triplett's counsel during trial to show that the defense had a copy of the whole report.[51]

**A.  *Brady***

_____

[49]On July 25, 2005, Triplett filed a Motion to Expand the Record, which was granted by the Court on July 28.  Rec. Doc. 10.  Hurricane Katrina hit in August 2005, and the Court moved to temporary headquarters in Baton Rouge.  In November 2005, the Court dismissed the original petition for habeas corpus, without acknowledging the granted Motion to Expand the Record, which had been overlooked in the disruption caused by the hurricane.  On October 18, 2007, the Court vacated the dismissal in order to consider the additional claim.

[50]Triplett testified on direct examination that he could not recall the other suspect's name.  State Rec., Vol. 2, Trial Transcript, *State v. Triplett*, No. 400-740, Oct. 21, 1998, p. 41.  When pressed on cross-examination, Triplett stated that the other individual was named "Michael McClay."  State Rec., Vol. 2, Trial Transcript, *State v. Triplett*, No. 400-740, Oct. 21, 1998, p. 45.

[51]The Court notes that the narrative section of the police report was not discoverable at the time of trial under La. Rev. Stat. § 44:3(A)(4)(a).

Triplett contends that the State violated his rights under *Brady v. Maryland*, 373 U.S. 83 (1963) by failing to disclose a complete copy of the police report detailing his arrest.  Triplett claims that the withheld section would have (a) impeached the arresting officers' testimony regarding the facts of the arrest, and (b) corroborated his own testimony.

The suppression of evidence by the prosecution violates due process where the evidence is material to either guilt or punishment.  *Brady*, 373 U.S. at 87.  The duty to disclose applies even in the absence of request by the defendant.  *Strickler v. Greene*, 527 U.S. 263, 280 (1999).  Under *Brady* an inadvertent nondisclosure has the same impact on the fairness of the proceedings as deliberate concealment.  *Strickler*, 527 U.S. at 288.  Evidence is "material" where there is a reasonable probability that, had the evidence been disclosed at trial, the result of the proceeding would have been more favorable to the accused.  *United States v. Bagley*, 473 U.S. 667, 684 (1985).  Material evidence includes both exculpatory and impeaching evidence.  *Id.* at 676.  A *Brady* violation occurs when the government fails to disclose material exculpatory evidence even when only police officers are aware of its existence.  *Kyles v. Whitley*, 514 U.S. 419, 438 (1995).  The reversal of a conviction is required when "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict."  *Id.* at 435.

To prevail on a *Brady* claim, a habeas petitioner must show three things: that the evidence was (1) favorable, (2) material, and (3) withheld by the prosecution.  *Drew v. Collins*, 964 F.2d 411, 419 (5th Cir. 1992).  The determination of whether evidence is material is a mixed question of law and fact; thus, a federal court must defer to the state court's decision unless it was "contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States."  28 U.S.C. 254(d)(1); *Summers v. Dretke*, 431 F.3d 861, 878 (5th Cir. 2005).

In Triplett's original Motion to Expand the Record, made after receipt of his D.A. files and filed in Criminal District Court, he urged the court to incorporate into his record a claim of

actual innocence and the accompanying police report as evidence.  The state court judge denied

the motion.  Her reasons for denial were the following:

> Defendant's claims rest on a police report (G-48336), which he received from the District Attorney's Office pursuant to a public records request.  Oddly, defendant has attached only one page of a six-page police report.  As this court can not review defendant's claims of error without a complete police report, defendant has failed to carry his burden of proof.[52]

The state court judge relied upon La. C. Cr. P. art. 930.2 (providing that a prisoner

making a claim for post-conviction relief bears the burden of proving that such relief should be

granted), and *State v. Arnold*, 816 So.2d 289 (La. 2002).  *Arnold* is a one-paragraph *per curium*

opinion denying post-conviction relief on a double jeopardy claim on the grounds that a properly

pleaded double jeopardy claim after a guilty plea rests solely on the charging documents and

plea colloquy, while the claim under review would have required a more probing review.  *Id.*

The state court's reliance on the *Arnold* decision was unreasonable, as *Arnold* appears

largely irrelevant to the issue at hand.  First, clearly some sort of mix-up occurred with regard to

the police report in Triplett's case.   It seems that, at most, Triplett was in possession of four

pages out of a five-page report.  He contends he  "provided the reviewing court with the

remainder of the police reports, which petitioner only possess (3) three additional pages."   Rec.

Doc. 24, p. 5.  In contrast, the State's Supplemental Response contains the entire police

report–all five pages–including two pages which reference Michael Cola.  To further confuse

matters, the police report the state court may initially have been provided may consist of page 3

of the Eddie Triplett/Michael Cola report and three pages of a six-page report detailing an

incident that occurred in 1987, eleven years prior to the crime Triplett was convicted of in this

case.  The 1987 report also involved Triplett and also occurred on the 8900 block of Green

Street; thus if not read carefully it might have been taken as part of the report presently in

question.

---

[52]Rec. Doc. 9, p. 34.

Second, the Court knows of no legal requirement that a habeas petitioner must present a complete record on a post-conviction motion to expand the record in order to carry his burden of proof. The case cited by the state court judge sheds no light onto the reasoning behind her decision. Clearly established federal law provides that the defendant has a right to a complete record in order to protect his right of appellate review. *Mayer v. City of Chicago*, 404 U.S. 189, 198 (1971). Yet the Court is aware of no law that suggests that an appellate or reviewing court may decline to review a claim simply because the defendant has not provided a complete record to the court. If a defendant has not provided sufficient support for his claim, of course, the court may deny relief; however, the proposition that a court may refuse to consider a claim at all based on a perceived lack of complete documents is inappropriate, particularly considering the glaring discrepancy on the one page the police report which was unquestionably provided. The state court ruling furthermore lacks any mention of the law governing Triplett's claim (e.g., *Brady*), which was obviously at issue from the face of the document. Accordingly, this Court declines to follow the state court's decision in this case.

Triplett asserts that the complete police report was (1) withheld, (2) favorable to his defense, and (3) material to the issue of guilt. The State strongly opposes Triplett's assertion that the defense was not in possession of the complete report at trial, but makes no arguments in regards to the report's materiality or favorable nature and does not claim that the prosecution provided the report to the defense. The State also does not address Triplett's claims of ineffective assistance of counsel and solicitation of false testimony.

1. Was the report suppressed?

For reasons which follow, this Court is unable to determine whether Triplett's trial counsel was in actual possession of the full police report and therefore finds it necessary to hold an evidentiary hearing in order to properly address Triplett's claims.

It is undisputed that Triplett did not obtain a complete report until he received a copy of his D.A. files in 2003. Besides his allegation that he did not see the full report until that time,

Triplett does not have any evidence that his trial counsel was not in possession of the report. The State points to defense counsel's cross-examination of the arresting officers to rebut Triplett's claim and prove that the defense must have been in possession of the entire report at trial. At trial, the following exchange took place between Officer Keating and defense counsel:

> Q:  Okay.  You didn't state in the police report that he started to ride off in his bike, correct?
>
> A:  I believe I put that he began to peddle off at a very fast pace on his bicycle.
>
> Q:  Okay.  Would you like your police report to refresh your recollection about that?
>
> A:  Sure.
>
> Q:  Is that your police report?
>
> A:  Yes, sir.  It is.
>
> Q:  Okay. And in terms of him peddling off in a very fast – at a very fast pace –
>
> A:  He began to flee.
>
> Q:  Okay.  He didn't take off on his bicycle, though.
>
> A:  Yes, sir.  He was still on his bicycle.
>
> Q:  Okay.  But you're saying he took off on his bicycle?
>
> A:  Yes.  He's fleeing on his bicycle.  That is correct.  Peddling his bicycle.[53]

The State treats this exchange as proof that defense counsel (a) was in possession of the complete police report, as evidenced by his use of a report to refresh the officer's recollection, and (b) had read it, as evidenced by his knowledge of the part of the narrative concerning the suspect's attempted flight on bicycle.  Rec. Doc. 23, p. 4.  The argument that defense counsel was in possession of the complete report because of his knowledge of the reported flight lacks merit because Officer Keating testified that Triplett had pedaled away on his bicycle during the hearing on the motion to suppress the evidence and again during direct examination.   In regards to the State's first argument, Triplett does not claim that the defense lacked all portions of the

---

[53]State Rec., Vol. 2, Trial Transcript, *State v. Triplett*, No. 400-740, Oct. 21, 1998,  p. 25.

police report.  Instead, he acknowledges that the defense was in possession of the "gist" section, page 5, which gives a short account of the arrest and references Triplett by name.  Thus defense counsel had a copy of the gist at trial and could have handed that portion to Officer Keating during cross-examination to refresh his memory.

Triplett's claim that defense counsel did not possess the two-page "narrative" portion referencing Michael Cola is consistent with the trial transcript.  Defense counsel asked, "you *didn't* state in the police report that he started to ride off in his bike, correct?" and "But you're saying that he took off on his bicycle?"[54]  The gist does not state that Triplett fled on his bicycle. The gist reads in pertinent part as follows:

> Officers Keating and Staehle observed the A/S peering into a park [sic] vehicle. Upon stopping the A/S, the officers observed the A/S place a clear plastic bag containing a white substance into his mouth.[55]

No mention is made of any flight from the police, which would explain defense counsel's attempt to call into question whether such flight had in fact taken place.  Defense counsel was arguably trying to get the officer to admit that he had not included the flight in the police report in order to challenge the legality of the initial stop.[56]  If Triplett had not attempted to escape or evade the police car, the officers may have lacked the requisite level of suspicion to make the stop under *Illinois v. Wardlow*, 528 U.S. 119 (2000),  and *Terry v. Ohio*, 392 U.S. 1 (1968). Therefore, the State has failed to rebut Triplett's claim that the defense did not possess the complete report at trial.

Nevertheless, the burden is on the Triplett to prove that the prosecution suppressed the evidence in question.  *United States v. Sink*, 586 F.2d 1041, 1051 (5th Cir. 1978), *cert. denied.*, 443 U.S. 912 (1979).  Triplett has presented compelling evidence to show the complete lack of mention of the Michael Cola section before his D.A. files were obtained, but has not proven that

---

[54]State Rec., Vol. 2, Trial Transcript, *State v. Triplett*, No. 400-740, Oct. 21, 1998,  pp. 24-25.
[55]Rec. Doc. 23, Att.
[56]Indeed, Officer Keating testified that when they first approached Triplett, he was "[j]ust being a suspicious person.  That's all." State Rec., Vol. 2, Trial Transcript, *State v. Triplett*, No. 400-740, Oct. 21, 1998, p. 36.

the prosecution suppressed the evidence.  After reviewing the state court record, this Court is unable to determine positively whether the complete police report was furnished to the defense for trial preparation.  The State's failure to deny that the prosecution withheld the evidence, along with the transcript of the defense's cross-examination of Officer Keating, lead to the clear implication that a full copy of the police report was indeed withheld.  The State itself has never asserted that it turned over the report to the defense.  This Court must therefore hold a hearing to determine whether the prosecution withheld this evidence, and even if it was withheld, whether Triplett's trial counsel was in actual possession of the evidence at trial.

### 2. Favorable character of the evidence

Triplett testified at trial, and continues to maintain, that the officers stopped two suspects at the time of his arrest and that it was the other individual who dropped the cocaine on the ground.  The officers testified that they only stopped one suspect at the time and place of Triplett's arrest and that Tripplet dropped or threw the cocaine.  However, the police report made pursuant to Triplett's arrest refers to two different people.  This piece of information, even if a clerical error, bolsters Triplett's contention that the officers stopped two individuals that night on Green Street and lends support to his claim of actual innocence.  This Court finds, then, that the narrative section of the police report was favorable to Triplett as regards to the determination of guilt.

### 3. Materiality of the evidence

To prove *Brady* materiality, the suppressed evidence must be of such a character as to undermine confidence in the verdict.  *Bagley*, 473 U.S. at 679.  Material evidence includes both exculpatory evidence and evidence would be useful for impeachment.  *Lawrence v. Lensing*, 42 F.3d 255 (5th Cir.1994).

The main divergence between Triplett's testimony and that of the arresting officers was whether it was Triplett who was caught in possession of cocaine or whether it was another

individual.  The officers testified that Triplett was the only suspect apprehended at that place and time,[57] while Triplett testified that there was another man simultaneously arrested and that it was this other individual who was in possession of cocaine.[58]  Thus identity was squarely at issue at trial, with guilt or innocence resting on the credibility of the testifying witnesses.

The only evidence the defense introduced at trial to prove that another suspect was  at the scene was Triplett's own testimony.  As a repeat felon, Triplett's credibility was undermined from the time he took the stand, and the reliability of his testimony was surely called into question by the contrary testimony of the two arresting officers.  If the defense had presented evidence to bolster Triplett's assertion that two individuals were in fact apprehended at the place and time of his arrest, it would have given his claim more credibility.  Even if he could not prove that the other suspect was actually the one who tossed the cocaine to the ground, evidence that two suspects were on the scene could plausibly create a reasonable doubt as to the identity of the perpetrator.  Evidence which would serve to contradict the testimony of a State witness has been held to be material under *Brady*.  *Mahler v. Kaylo*, 537 F.3d 494, 503 (5th Cir. 2008).  Where the two crucial aspects of the case are identity and the credibility of the arresting officers, evidence that has the effect of undermining both is sufficiently material to show a *Brady* violation.

In reaching this conclusion, this Court notes that the presence of another name in the police report supposedly describing Triplett's arrest is especially troubling given the fact that Triplett was sentenced to life imprisonment for this crime due to his three previous convictions for nonviolent offenses.  The pertinent fact is not whether Triplett has successfully proven his actual innocence, but whether the withheld evidence would have had the effect of creating a reasonable probability that the jury would have reached a verdict more favorable to the accused.

---

[57]"We did not stop anybody else in the same location." State Rec., Vol. 2, Trial Transcript, *State v. Triplett*, No. 400-740, Oct. 21, 1998, p. 35.
[58]State Rec., Vol. 2, Trial Transcript, *State v. Triplett*, No. 400-740, Oct. 21, 1998,  p. 45.

It is of special importance not to let sloppy or fraudulent police work slide by a reviewing court when the consequence may be the loss of a man's liberty for life.

### B.  Ineffective Assistance of Counsel

The standard for prejudice under *Strickland v. Washington*, 466 U.S. 668 (1984) is identical to the standard for materiality under *Brady*.  *Johnson v. Scott*, 68 F.3d 106, 109-10 (5th Cir. 1995); *Strickland*, 466 U.S. at 687-88, 694 ("A party claiming ineffective assistance must show that . . . he suffered prejudice . . . To prove prejudice, a Triplett must demonstrate . . . that, but for counsel's unprofessional errors, the result of the proceeding would have been different"). Therefore, if the narrative section of the police report was indeed available to the defense counsel, habeas relief would nevertheless be warranted because the evidence in question was not used in cross-examination or introduced into evidence at trial.  However, if the complete report was in fact *not* disclosed by the prosecution, the Court does not find that defense counsel was deficient.  Because the complete police report was not discoverable until post-trial, it would have been reasonable to believe that the State would not disclose it.  La. Rev. Stat.  § 44:3(A)(4)(a); *see Strickland*, 466 U.S. at 691.

### C.  Perjured Testimony

The standard of materiality for claims that the prosecution used perjured testimony or false evidence is less stringent than the materiality standard under *Brady* or the standard for prejudice under *Strickland*.  *Kirkpatrick v. Whitley*, 922 F.3d 491, 497 (5th Cir. 1993).  Under *Napue v. Illinois*, 360 U.S. 264 (1959) and *United States v. Agurs*, 427 U.S. 97, 103 (1976), if the prosecution has knowingly used false evidence or perjured testimony, the conviction must be overturned if there is a reasonable likelihood that the evidence could have affected the verdict. *Bagley*, 473 U.S. at 679 n.9.

The Court finds no evidence beyond Triplett's own assertions that tends to show that the officers' testimony was perjured. While Triplett's *Brady* and *Strickland* claims depend on the

evidence's materiality and disclosure rather than on its *truthfulness*, this claim hinges on whether the evidence represented the true state of things.  Because the narrative section of the police report never mentions Triplett, it does not comport with the gist section, which describes the same events – albeit in less detail – using Triplett's name.  Both reports cannot be accurate.  Nevertheless, alternative explanations may exist.   Therefore, unless it becomes clear at the evidentiary hearing that the officers' testimony amounted to perjury, Triplett's claim must fail.

## CONCLUSION

The state court declined to hold an evidentiary hearing in this matter.  This Court finds that due to the short shrift the state courts gave Triplett in regards to his claim to expand the record with the newly discovered police report, the Court finds that Triplett was denied his right to a full and fair hearing.

Accordingly,

IT IS ORDERED that the petition of Eddie Triplett for writ of habeas corpus under 28 U.S.C. § 2254 is denied as to the first seven claims presented.

IT IS FURTHER ORDERED that as to the eighth claim, an evidentiary hearing shall be held.

IT IS FURTHER ORDERED that the Federal Public Defender is appointed to represent Eddie Triplett.

IT IS FURTHER ORDERED that a status conference shall be held on July 19, 2011, at 11:00 a.m. to pick a date for the evidentiary hearing to be held in August 2011.

New Orleans, Louisiana, this 7th  day of July, 2011.

HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE

-29-